UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MELVIN BROWN,

                Plaintiff,

-against-

SGT PHIPPS, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

19-CV-04356 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

    Melvin Brown ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against Sergeant Phipps, Inmate Grievance Program ("IGP") Supervisor R. Barnofsky, and Correction Officers A. Pierce, Melnick, O'Connor, Erlwein, Johnson, and J. Gonzalez (collectively, "Defendants"), for violating his rights under the Constitution. (Doc. 1, "Compl."). Plaintiff asserts claims for excessive force, failure to protect, and deliberate indifference to Plaintiff's serious medical needs.

    Defendants filed a motion for summary judgment under Federal Rule of Civil Procedure 56 on October 2, 2020. (Doc. 58; Docs. 59, 64, "Def. Br.").[1] Plaintiff opposed the motion on October 16, 2020. (Doc. 66, "Opp."). The motion was briefed fully with the filing of Defendants' reply memorandum of law in further support of their motion to dismiss on October 30, 2020 (Doc. 67, "Reply Br.").

    For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

---

[1] Defendants filed a Memorandum of Law in Support of the Motion for Summary Judgment on October 2, 2020 (Doc. 59) and an Amended Memorandum of Law on October 4, 2020 (Doc. 64). The only difference between the documents is the non-substantive addition of a Tables of Contents.

**BACKGROUND**

The facts recited herein are drawn from the Complaint,[2] Defendants' Rule 56.1 Statement (Doc. 62, "Def. 56.1 Stmt."), Plaintiff's affirmation in opposition[3] (*see* Opp.), the Declaration of Janice Powers (Doc. 61, "Powers Decl.") together with the exhibits annexed thereto, and the Declaration of Rachel Seguin (Doc. 60, "Seguin Decl.") together with the exhibit annexed thereto. The Court has also considered documents electronically filed in this action though not annexed to this motion; in particular, a letter from Plaintiff to Judge Briccetti[4] dated September 30, 2019 with attachments concerning a grievance filed by Plaintiff concerning the incident that is the subject of this action. (Doc. 39).

On or about November 28, 2018, at Woodbourne Correctional Facility ("Woodbourne"), Defendant Gonzalez observed Plaintiff pick up a cylinder-shaped item resembling a can and place it in his pocket. (Compl. at 4, 8; Def. 56.1 Stmt. ¶¶ 18-19). Defendant Gonzalez advised Defendant Barnofsky what she had observed. (Def. 56.1 Stmt. ¶ 20). Defendant Barnofsky called Defendant O'Connor advising him of the call from Defendant Gonzalez, and that Plaintiff was possibly in possession of contraband. (*Id*. ¶ 23). Defendant O'Connor stopped Plaintiff to pat frisk him. (*Id*. ¶ 25; Compl. at 4).

---

[2] Citations to page numbers of documents filed by Plaintiff correspond to the pagination generated by ECF.

[3] Plaintiff did not submit his own Rule 56.1 Statement or respond to Defendants' 56.1 Statement. "While *pro se* litigants are . . . not excused from meeting the requirements of Local Rule 56.1 . . . where a *pro se* plaintiff fails to submit a proper Rule 56.1 Statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Wiggins v. Griffin*, No. 18-CV-07559, 2021 WL 706720, at *1 n.1 (S.D.N.Y. Feb. 22, 2021) (internal quotation marks omitted). While Plaintiff's affirmation in opposition does not address Defendants' Rule 56.1 Statement, the Court, in its discretion, will consider the submission as opposition to Defendants' Rule 56.1 Statement. *Brooks v. Westchester Cty. Jail*, No. 19-CV-10901, 2021 WL 3292229, at *1 (S.D.N.Y. Aug. 2, 2021).

[4] This case proceeded before Judge Briccetti prior to its reassignment to this Court on March 17, 2020.

Following the pat frisk, during the processing and examination of Plaintiff's property by Defendant Melnick, Plaintiff became argumentative and lunged forward at Defendant O'Connor. (Def. 56.1 Stmt. ¶ 26). Plaintiff and Defendant O'Connor fell to the floor, and Plaintiff attempted to strike Defendant O'Connor. (*Id*. ¶¶ 29, 31). A number of correction officers were present at the scene for various reasons and intervened in the struggle between Plaintiff and Defendant O'Connor. Defendant Erlwein, who observed the pat frisk and events following thereafter, grabbed Plaintiff's right arm so that mechanical restraints could be applied. (*Id*. ¶¶ 28-29, 33). Defendant Johnson, who passing through the area, observed Plaintiff struggling with officers, intervened by holding Plaintiff's upper torso down while assisting Defendant Erlwein in bringing Plaintiff's right arm behind his back. (*Id*. ¶¶ 30, 33). Defendant Melnick grabbed Plaintiff's lower extremities, rolled Plaintiff to his side to allow Defendant O'Connor to escape from under Plaintiff, and pushed Plaintiff face down towards the floor so mechanical restraints could be applied behind Plaintiff's back. (*Id*. ¶¶ 35-36). Defendant Pierce grabbed Plaintiff's arm and ultimately placed Plaintiff's wrists into a mechanical restraint while other officers held Plaintiff's upper body and arms. (*Id*. ¶ 32).

Defendant Phipps, as area Sergeant, arrived at the scene after Plaintiff had been restrained and escorted Plaintiff to the medical clinic with two officers. (*Id*. ¶¶ 38-39). Plaintiff maintains that when Defendant Phipps arrived, he told the officers to pick Plaintiff up, pushed Plaintiff's head into the wall three times while the other officers hit Plaintiff's head, arms, and left side with an object, and continued to punch and kick Plaintiff on the way to—and inside the—elevator. (Compl. at 5, 8; Opp. at 3, 5). Plaintiff alleges that he was then denied medical care. (Compl. at 9). Medical records indicate that Plaintiff was examined at Woodbourne by nurse Rosemarie

Escalera. (Powers Decl. Ex. I). Plaintiff was transferred to Eastern Correctional Facility ("Eastern") that same day. (Def. 56.1 Stmt. ¶ 49).

Plaintiff stresses that he was not found to be in possession of contraband. (Opp. at 3, 5, 6). Thus, he argues, the physical altercation was precipitated by false reporting of possession of contraband which, in turn, was the result of retaliation for Plaintiff's prior suit against Correction Officers Dubois and Padgett (who are not defendants in this action) that arose when Plaintiff was at Eastern. (*Id*. at 6-7; *see Brown v. DuBois*, No. 15-CV-01515 (N.D.N.Y.)).

Plaintiff alleged affirmatively in the Complaint, and contends in his opposition, that prior to commencing this action, he "wrote [his] grievance out and sent it in at Eastern" and did not receive any response thereto. (Compl. at 2; Opp. at 1, 7). Although not mentioned in the Complaint, Plaintiff wrote to the Court in connection with earlier motion practice contending that he appealed "to the office in Albany" and annexed to that letter copies of documents concerning the grievance filed while he was at Eastern. (Doc. 39). Plaintiff states in his opposition that while he was incarcerated at Upstate Correctional Facility ("Upstate"), he "appeal[ed] to the CORC in accordance to [sic] the Directive" and has not received any response. (Opp. at 9). Defendants now move for summary judgment contending, *inter alia*, that Plaintiff failed to exhaust his administrative remedies prior to bringing suit.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F.

Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id*. (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id*. (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts . . . ." *Id*. (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary

judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant . . . is proper").

The Court is, of course, mindful that "[p]ro se litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018) (internal quotation marks omitted). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v. George*, No. 18-CV-02630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020). This status does not, however, excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by evidence" to overcome the motion. *Wisdom v. Loiodice*, No. 17-CV-04837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (explaining that the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment" (internal quotation marks

omitted)); *Ross v. Koenigsmann*, No. 14-CV-01321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017), *adopted sub nom. Ross v. Mannava*, 2017 WL 4338883 (N.D.N.Y. Sept. 29, 2017).

## ANALYSIS

I. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Hernández v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), and it is "'mandatory': [a]n inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S.Ct. 1850, 1856 (2016) (citation omitted). "Moreover, the PLRA 'requires proper exhaustion, which means using all steps that the prison grievance system holds out.'" *Ayala-Rosario v. Westchester Cty.*, No. 19-CV-3052, 2020 WL 3618190, at *4 (S.D.N.Y. July 2, 2020) (quoting *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016)). This "means that 'prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Gottesfeld v. Anderson*, No. 18-CV-10836, 2020 WL 1082590, at *6 (S.D.N.Y. Mar. 6, 2020) (quoting *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012)).

As an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), Plaintiff was required to follow a three-step process to fully and completely exhaust the grievance process. *See generally Amador v. Andrews*, 655 F.3d 89, 96-

97 (2d Cir. 2011) (outlining DOCCS' three-step grievance process). First, a grievance must be submitted to the Inmate Grievance Resolution Committee ("IGRC"), a facility-level body consisting of inmates and facility staff members. N.Y. Comp. Codes R. & Regs. tit. 7, §§ 701.4, 701.5(a)-(b). Second, should the inmate be dissatisfied with the conclusion reached by the IGRC, he may appeal that decision to the superintendent of the facility within seven calendar days of receiving the IGRC's determination. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(c)(1). Finally, if the superintendent's conclusions are unfavorable, the inmate may appeal that decision to the Central Office Review Committee ("CORC") within seven calendar days of receiving the superintendent's determination. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(d)(1)(i). Grievances concerning misconduct by staff are subject to an expedited administrative review in which they are immediately referred to the superintendent of the facility. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.8. Such grievances must also be exhausted through a final appeal to CORC. *Davis v. Grant*, No. 15-CV-05359, 2019 WL 498277, at *7 (S.D.N.Y. Feb. 8, 2019). Only after completing all three steps may an inmate initiate suit. *Id*.

While incarcerated at Eastern, Plaintiff filed a grievance on December 10, 2018 concerning the incident at Woodbourne. (Doc. 39 at 2; Powers Decl. Ex. L, 11:21-24). Plaintiff's grievance was subject to expedited review under § 701.8 and, as such, was passed directly to the superintendent for investigation. (Doc. 39 at 2-3). Plaintiff did not receive any response to his grievance and was still pending a superintendent response as of February 8, 2019. (*Id*. at 3). Plaintiff was notified that the superintendent has twenty-five days to respond and that if it is beyond that time period Plaintiff may contact the IGP Supervisor to appeal to the next level. (*Id*.). Plaintiff maintains that he appealed "to the office in Albany" (*id*. at 1), "in accordance to [sic] the Directive," and has not received a response (Opp. at 9). Plaintiff contends that Upstate should have

a log book containing entries for his outgoing legal mail and that whether his appeal was mailed and received is "on the facility it's not on [his] part." (*Id*. at 4). When asked at his deposition how he appealed to CORC, Plaintiff stated: "I wrote it out and I sent it with a copy of my grievance and I sent it up to Albany." (Powers Decl. Ex. L at 16:4-8). Plaintiff further testified that he followed up "[b]y asking this grievance [sic] where I was to find out about the answer to my grievance. Mr. Black [grievance supervisor at Woodbourne] kept telling the grievance guy at Upstate they still investigating. . . ." (*id*. at 16:13-17:4). Plaintiff does not specify where in Albany he sent his grievance and fails to provide any other details concerning the purported appeal to CORC.

Defendants submitted a declaration from Rachael Seguin, the Assistant Director of the IGP for DOCCS. (Doc. 60). Seguin, in her declaration, states that she is the custodian of records for CORC and CORC maintains a database containing records of appeals of grievances received, heard, and decided by CORC since the 1990s. Seguin's declaration further states that she conducted a search of DOCCS records for appeals received by CORC for Plaintiff, and annexes as Exhibit A a copy of the computer printout from the CORC database reflecting the results of that search. (*Id*. at 6-7). Seguin concludes that Exhibit A to her declaration reveals that no appeal exists relating to the November 2018 incident or the grievance filed December 10, 2018. The exhibit reflects that Plaintiff appealed five grievances to CORC from two different correctional facilities but none in the relevant timeframe.

Here, "Plaintiff's 'self-serving' and 'incomplete' testimony that he sent an appeal to 'Albany' is insufficient to create a genuine dispute of fact, particularly in light of Defendants' evidence that no grievance was ever sent to the CORC." *Khudan v. Lee*, No. 12-CV-08147, 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016) (Sullivan, J.); *see also Lozada v. Delta Airlines, Inc.*, No. 13-CV-07388, 2014 WL 2738529, at *5 (S.D.N.Y. June 17, 2014) ("[plaintiff's] self-serving,

incomplete, and inconsistent recollection is not sufficient to create a genuine dispute of fact in light of [defendant's] documented evidence"); *Deebs v. Alstom Transp., Inc.*, 346 Fed. App'x 654, 656-57 (2d Cir. 2009) (plaintiffs' "own self-serving testimony" insufficient to defeat summary judgment in the face of documentary evidence adduced during discovery cited by defendants).

There can be no dispute that Plaintiff was required to file an appeal with the CORC, even if he never received a decision on the grievance. *Mims v. Yehl*, No. 13-CV-06405, 2014 WL 4715883, at *6 (W.D.N.Y. Sept. 22, 2014). Indeed, Plaintiff was aware of the exhaustion requirement (Opp. at 1 ("Question is did I exhaust my administrative remedies, yes I did . . . I[] appeal[ed] to the CORC in accordance to [sic] the Directive")); and a lawsuit commenced by Plaintiff in the Northern District of New York was recently dismissed on exhaustion grounds (*see Brown v. DuBois*, No. 15-CV-01515 (N.D.N.Y. May 2, 2018) (Doc. 82)). Although there are situations in which an inmate's failure to exhaust administrative remedies may be excused when the remedies are unavailable, *see Thompson v. Booth*, No. 16-CV-03477, 2021 WL 918708, at *7 (S.D.N.Y. Mar. 10, 2021), there is simply no basis to excuse Plaintiff's failure to exhaust his administrative remedies in this case. Plaintiff successfully used the IGP and appealed five grievances to CORC since he has been in DOCCS custody. (Seguin Decl. Ex. A). Plaintiff does not allege that anyone or anything prevented him from filing an appeal related to the November 2018 incident and December 10, 2018 grievance. *See Ross*, 136 S. Ct. at 1859-60.

"Instead, Plaintiff's bare assertions that he submitted his [appeal] but never received a response fall squarely into the category of assertions that courts in the Second Circuit have found do not excuse the exhaustion requirement." *Davis v. Grant*, No. 15-CV-05359, 2019 WL 498277, at *8 (S.D.N.Y. Feb. 8, 2019). Plaintiff's unsupported statements, considered in light of the evidence Defendants have submitted showing there is no record of Plaintiff filing an appeal

regarding the November 2018 incident, and evidence that Plaintiff has successfully used the IGP and exhausted remedies on five prior occasions, are simply insufficient to establish a genuine issue of material fact. *Id*.; *see also Khudan*, 2016 WL 4735364, at *5; *Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004), *aff'd*, 178 Fed. App'x 39 (2d Cir. 2006).

Under these circumstances, Plaintiff's claims under 42 U.S.C. § 1983 against Defendants are dismissed in light of Plaintiff's failure to exhaust his administrative remedies under the PLRA.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and Plaintiff's Complaint is dismissed with prejudice.[5]

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 58, mail a copy of this Memorandum Opinion and Order to Plaintiff, and close this case.

**SO ORDERED:**

Dated:   White Plains, New York
        August 12, 2021

_____
PHILIP M. HALPERN
United States District Judge

---

[5] Given the conclusions reached herein, the Court need not and does not address Defendants' remaining arguments for summary judgment.